**Arthur Ray BOWLING, et al., Plaintiffs,**

v.

**PFIZER, INC. et al., Defendants.**

**No. C–1–91–256.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 25, 1994.

Individuals, listed at [38–1], who fall within the definition of the Purported Class.

Janet Gilligan Abaray, Sherrill Patricia Hondorf, Terrence Lee Goodman, Fay Elizabeth Stilz, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Elaine Pauley.

Marc David Mezibov, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Ronald Dempster, Freda Dempster, Ministry of Health, Province of Alberta, Canada, Ministry of Health, Province of Manitoba, Canada, amici.

James Ralph Adams, Frost & Jacobs, Cincinnati, OH, for Pfizer, Inc., Shiley, Inc.

Larry M. Keller, Gary Green, Sidhoff, Pincus & Green, P.C., Morton B. Wapner, Philadelphia, PA, for Putative Class in Pennsylvania.

Gates Thornton Richards, Gates T. Richards Co., Cincinnati, OH, John T. Johnson, Johnson & Dylewski, P.C., Houston, TX, for Nellie Melling.

Thomas Collins Rink, Strauss & Troy, John Weld Peck, David B. Malone, Peck, Shaffer & Williams, Cincinnati, OH, for Robert L. Black, Jr.

Robert L. Black, Jr., pro se.

Brian Wolfman, Public Citizen Litigation Group, Washington, DC, for Public Citizen, amicus.

Vance C. Simonds, Jr., Kasdan Simonds Peterson McIntyre Epstein & Martin, Irvine, CA, for Dutch Consumentenbond, amicus.

Thomas Collins Rink, Strauss & Troy, Peter J. Strauss, Graydon, Head & Ritchey, John Weld Peck, David B. Malone, Peck Shaffer & Williams, Cincinnati, OH, for Peter J. Strauss.

*ORDER LIFTING STAY DENYING MOTIONS TO INTERVENE AND AUTHORIZING DISTRIBUTION OF FUNDS*

SPIEGEL, District Judge.

This matter is before the Court on:

I. The Motion by the Pennsylvania Class Objectors for an Order to Alter or Amend Order Dated April 14, 1994

Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for plaintiffs.

Harry Bernard Plotnick, Cincinnati, OH, Bruce A. Finzen, Minneapolis, MN, for 183

(doc. 371), the Plaintiff Class's Response (doc. 378), the Defendants' Response (doc. 380), and the Motion of the Pennsylvania Class Objectors for Ruling on Pending Motion (417), to which the Plaintiff Class (doc. 422), as well as the Defendants (doc. 423) have responded;

II. The Motion by Class Members Gary Crane et al. to Intervene (doc. 373), the Plaintiff Class's Response (doc. 373) and the Defendants' Response (doc. 384); and the Motion of Class Members Gary Crane et al. for Discovery and Briefing Schedule on Attorney's Fees (376).

III. In addition the Special Masters/Trustees have submitted the Notice of Mailing to Class Members and for Publication (doc. 397).

## I. PENNSYLVANIA CLASS OBJECTORS' MOTIONS TO INTERVENE

Previously, the Pennsylvania Class Objectors ("PCO") have filed a Motion to Intervene (doc. 265), which we denied by our Order of April 5, 1994 (doc. 363). The PCO also filed a Motion to Reconsider (doc. 315), which we denied by Order of April 12, 1994 (doc. 368). In addition the PCO has taken numerous appeals to the Sixth Circuit, all of which have been dismissed. Finally, the United States Supreme Court has denied *certiorari* to the PCO.

*Certiorari* has been denied, all appeals have been exhausted and the judgment of this Court approving the settlement is final. The parties in co-operation with the Special Masters/Trustees are moving toward the implementation of the settlement and the class members will soon begin to enjoy the benefits of their lawsuit. The PCO has delayed the implementation of the settlement for over two years with their series of appeals. The PCO now has moved this Court to amend our Order of April 5, 1994, in which we denied the PCO's Motion to Intervene. In the alternative, the PCO request that we grant their renewed Motion to Intervene and/or grant relief from judgment under Rule 60(b) or to grant permission for the filing of an amended

60(b) motion. The admitted aim of the PCO's motions is to be allowed to intervene in order to file another round of appeals, which would again significantly delay the implementation of the settlement. The PCO has had an opportunity to make their objections to the settlement and those objections have been carefully considered. It is time now for the implementation of the settlement for the benefit of the Plaintiffs' Class. The tens of thousands of class members who are waiting for the settlement's benefits have waited long enough. Furthermore, our understanding of the Sixth Circuit's rulings in the PCO's previous appeals indicates that even if we allowed the PCO to intervene at this point, their opportunity for appeal has long past.

### A. TIMELINESS OF THE PCO'S MOTIONS

 "An application for permissive or intervention of right must be timely." *Michigan Ass'n for Retarded Citizens v. Smith,* 657 F.2d 102, 105 (6th Cir.1981). If untimely, intervention must be denied. *Id.* Timeliness is a matter within the sound discretion of the district court. *Id.* The Sixth Circuit has articulated the factors "which are particularly probative in determining whether intervention is timely." *Stotts v. Memphis Fire Dept.,* 679 F.2d 579, 582 (6th Cir.1982). Those factors are:

1) the purpose for which intervention is sought; 2) the length of time preceding the application for intervention during which the proposed intervenor knew or reasonably should have known of his interest in the case; 3) the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case to apply promptly for intervention; 4) the existence of unusual circumstances militating against or in favor of intervention; and 5) the point to which the suit has progressed.

*Id.* (citing *Retarded Citizens,* 657 F.2d at 105). We will examine these in order.

### 1. *The Purpose for Intervention*

The PCO's stated purpose in seeking intervention is to pursue a course of further appeals, aimed at overturning this Court's approval of the settlement in this case. The PCO in their Motion for the Court to Rule on Pending Motion have made an impassioned plea that justice requires that their objections to class certification and to the settlement be revisited. They argue further that unless we grant their motion to intervene they will be deprived of their opportunity to be heard. However, the record of this case indicates that this Court has afforded the PCO ample opportunity to be heard and has in turn carefully considered and responded to each objection they have raised.

The PCO has had the opportunity to raise their arguments before this Court in numerous documents. In addition, Mr. Green spoke at length at the fairness hearing. In our Order Finding the Proposed Settlement to be Fair, we devoted forty pages to objections raised by the PCO. Document 250 at 18–58, August 19, 1992. Finally, we note that the Plaintiffs' Class, in their Memorandum in Opposition to the PCO's motion to amend cites us to the record in the PCO's original case in Pennsylvania in which counsel for the PCO applauded the *Bowling* settlement, explaining why the PCO had not opted out of this case, as they were entitled to under the settlement. The Plaintiffs' Class reports that counsel for the PCO told Judge Lord:

> [A]lthough our clients were offered the opportunity to opt [out] of the *Bowling* case, they elected to stay in the case and obtain the benefits from the Bowling settlement.... One of our clients has been identified as a candidate for a re-operation which means that her Pfizer heart valve would be removed and a new heart valve implanted. Under the *Bowling* settlement, this client could expect to receive substantial compensation and to thus be able to afford the procedure. Accordingly, the prospect of waiting many, many years for a resolution of the *Taylor* case, compared to the relief provided by a prompt implementation of the *Bowling* settlement was something that the client considered.

> The other client who has a working valve is also in a fragile state of health.

Memorandum of Plaintiffs' Class at 4, n. 4, Document 422, (citing a hearing in *Taylor v. Shiley* held on December 29, 1992).

The PCO's stated purpose in seeking to intervene is to attack the fairness of the settlement. But the PCO has had ample opportunity to do this before this Court. The Sixth Circuit has clearly delineated our responsibility in this situation in the *Stotts* case. There the Court of Appeals was reviewing a situation very similar to that now before us, where individuals sought to intervene to object to a consent decree that the district court had already approved:

> [T]he court afforded the proposed intervenors *an opportunity to air their objections* to the 1980 Decree. This is all that the court was required to do given its determination that the 1980 Decree was reasonable.

*Stotts*, 679 F.2d at 584 (emphasis added). This Court has given the PCO ample opportunity to "air their objections," and has considered and responded to each.

### 2. *The Delay in Moving for Intervention*

The PCO argues that they moved to intervene as soon as they realized that their failure to intervene would present a problem in their attempts to appeal the judgment of this Court. Essentially, the PCO's complaint is with the Court of Appeals. At the level of this district court, the PCO has been given every opportunity to present their case, even at this late date. Therefore, we are not inclined to grant this motion to intervene over two years after our approval of the settlement in order to provide the PCO with an opportunity to further delay its implementation.

### 3. *Prejudice to the Parties*

The third factor to be considered in determining whether a motion to intervene is timely is "the prejudice to the original parties due to the proposed intervenor's failure after he knew of or reasonably should have known of his interest in the case to apply promptly for intervention." *Stotts*, 679 F.2d

at 582. By far the most compelling reason to deny the PCO the opportunity to intervene is to immediately begin the implementation of the settlement. The Parties have the right to the compensation provided under the settlement. The research provided for should begin at once. Below, we authorize the first distribution from the Consultation Fund. The Special Masters/Trustees intend to disburse these funds in the next month. To postpone the benefits of the settlement for another round of appeals would indeed be prejudicial to the members of the class.

In our Order of April 5, 1994, which the PCO now request that we alter, we denied the PCO's motion to Intervene

> because of the substantial delay between approval of the settlement and return of this case to this Court, and the fact that intervention at this point would be prejudicial to the class....

Order at 1, Document 363. The reasoning that we applied in that order becomes more urgent with every passing day.

### 4. *Unusual Circumstances*

The fourth factor for timeliness provided by the Sixth Circuit is "the existence of unusual circumstances militating against or in favor of intervention." *Stotts*, 679 F.2d at 582. One of the most creative aspects of this settlement is the open ended nature of the Defendants' liability. For example the Defendants will remain liable for all fractures, regardless of the number. Another example is the continuing duty to replenish the Patient Benefit Fund to insure permanent availability of replacement surgeries. Finally, in several circumstances, the settlement offers Plaintiffs the opportunity to bring separate suit if he or she is not satisfied with the benefits provided under the settlement.

Besides the unusual flexibility of the settlement itself, this Court retains continuing jurisdiction over the operation of the settlement. The Court has appointed able and conscientious Special Masters/Trustees who also keep a watchful eye on the fairness of the settlement's implementation, and who regularly report to the Court. In addition the Special Masters/Trustees have assembled a Supervisory Panel composed of some of the most respected physicians in the field and a Foreign Fracture Panel of comparable expertise. Therefore, even if some of the PCO's wildly speculative predictions of problems with implementation of the settlement should surface, we are confident that the Court, in its continuing control, with the help and guidance of the competent professionals now assembled is prepared to address them.

### 5. *The Point to Which the Suit Has Progressed*

After considering timeliness in terms of the previous four factors the Sixth Circuit's directs us to consider "the point at which the suit has progressed." *Michigan Ass'n for Retarded Citizens*, 657 F.2d at 105. It is now over three years since the beginning of this litigation. The PCO first appeared in this case nearly two and one half years ago. The settlement has been approved for over two years. Notice has been sent to the class members. Objections and opt-outs have been completed. The Supervisory and Foreign Fracture Panels have been appointed and have been working for months. The first distribution from the Supervisory fund is only weeks away. The interest of justice would not be served by intervention at this time.

### B. *LEGAL INFIRMITIES IN PCO'S ARGUMENTS*

#### 1. *Objecting and Appearing Does Not Make the PCO a Party*

The PCO argues that intervention would merely formalize its status as an intervenor, because they appeared and objected at the fairness hearing. The Green firm argued to the Court of Appeals:

> [F]or all purposes, the court below treated appellants as parties in this case. Appellants ... vigorously participated extensively in the Fairness Hearings themselves.... The doctrine of *de facto* intervention is clearly applicable to appellants....

Appellants' Response to Appellees'–Defendants' Motion to Dismiss Appeal at 29. However, the Sixth Circuit rejected that argument, stating that "[b]ecause the appel-

lants are unnamed class members who neglected to intervene in the proceedings below, they lack standing to pursue this appeal." *Bowling v. Pfizer, Inc.,* No. 92–3973, 1993 WL 533489 (6th Cir. Dec. 21, 1993), (citing *Guthrie v. Evans,* 815 F.2d 626, 627–28 (11th Cir.1987); *Croyden Associates v. Alleco, Inc.,* 969 F.2d 675, 568–79 (8th Cir. 1992); *Walker v. City of Mesquite,* 858 F.2d 1071, 1073–75 (5th Cir.1988)). The PCO argued unsuccessfully to the Sixth Circuit that because this Court allowed the PCO to participate to the fullest extent possible, the PCO should be considered parties for the purposes of appeal. Ironically, now the PCO returns to this Court charging that their participation in the fairness hearing was inadequate.

### 2. *Intervention Will Not Accomplish the PCO's Goals*

■ The PCO seeks to intervene so that it can once again attempt to appeal from our approval of the settlement. But as the Defendants point out, intervention will not give the PCO the right to appeal. The time for appeal of that judgment has now passed. *See Jenkins v. State of Missouri,* 967 F.2d 1245, 1248 (8th Cir.1992) (where the district court granted the motion to intervene, and the court of appeals held that "granting the group intervenor status cannot breathe life into rights already foregone"). The PCO argues without authority that we can grant them intervenor status which relates back to the time which they filed their first appeal. Even if we were inclined to so rule, it is extremely hopeful speculation on the part of the PCO that the court of appeals would allow them to revive their appeal. The Sixth Circuits own language in one of the PCO's prior appeals would seem to rule out the effectiveness of "retroactive" intervention.

The lack of intervenor status *at the time of the appeal* suggests that the appellants were not "parties" when they brought the notice of appeal.

*Bowling v. Pfizer, Inc.,* No. 94–3519 (6th Cir. August 8, 1994) (citing Fed.R.App.P. 3(c); *Jenkins v. Missouri,* 967 F.2d 1245 (8th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992)).

### C. THE PCO'S OTHER ARGUMENTS

Although we believe that the reasoning set forth above is determinative of the PCO's motion now before us, we feel compelled to address briefly some of the more inflammatory accusations which the PCO makes in the Motion of the PA Class Objectors for Expedited Consideration and Raising Matters Under Fed.R.Civ.Pro. 60(b)(2), (3) and (6) (doc. 315). The PCO declares that we should amend our judgment in light of new evidence, discovered after our ruling that the settlement is fair. The PCO claims that their "new evidence" proves that a fraud was perpetrated on this Court by the misrepresentations of class counsel and counsel for the Defendants. In fact, we have heard many of these arguments before from the PCO, others are based on the PCO continued misunderstanding of the details of the settlement, and some are based on "new evidence" which in fact was brought forward by the parties and considered by the Court in the process of approving the settlement.

Running throughout the PCO arguments is the theme that Class Counsel and the Defendants colluded to fashion a settlement which was favorable to the Defendants. This objection was considered at length in our August 19, 1992 order approving the settlement. In that order, we studied the PCO's allegations carefully and discovered that the PCO provided no real evidence to support these allegations. However, admitting that proof of collusion was difficult, we focused on the settlement itself to discover if it in fact was fair. In doing so we followed the guidance of the United States Court of Appeals for the Fifth Circuit, which has stated:

It is, ultimately, in the settlement terms that the class representatives' judgment and the adequacy of their representation is either vindicated or found wanting. If the terms themselves are fair, reasonable, and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance.

*In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 212 (5th Cir.1981) *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). Having examined the settlement and found it fair, we find no basis for the PCO's bold allegations of collusion and fraud on the Court, particularly in the absence of any real evidence presented by the PCO.

One of the PCO's specific arguments is that the Court in approving the settlement failed to consider the strength of the class's fraud claims. Principally, this claim is based on the opinion of Professor Oscar Gray that the Plaintiffs' Class's fraud claim was stronger than was represented to the Court. In addition, the PCO claims that Class Counsel John T. Johnson and others withheld information concerning the Defendants' alleged fraud. However, the Court was well aware of Class Counsel Johnson's discoveries. The relative strength of the Plaintiffs' Class's fraud claim was considered at length by the Court. We acknowledge that the issue is far from certain, and is an appropriate subject for legal argument. However, we are satisfied that the relative strengths and weaknesses of the Plaintiffs' Class's fraud claims were weighed by the parties in reaching the settlement, and by the Court in approving it.

Another major accusation of the PCO is that the Court was deceived concerning the Defendants' prior medical research and in particular the Beaumont study. Here the PCO relies on articles appearing in the *New York Times* in the fall of 1992, shortly after the settlement was approved. Those articles, as characterized by the PCO, claim that the Defendants had perfected a method for detecting defective valves, using sophisticated X-ray techniques. The articles claim that the screening process would be quite costly and the PCO argues that they are significantly more expensive than is provided for in the settlement.

By the PCO's own admission "the Court, *sui sponte,* raised the issue of the stories relating to Beaumont that had appeared in *The New York Times* and the *Wall Street Journal....*" Motion of the PCO at 34, Document 315. The Court was satisfied by the response of the parties concerning the Beaumont studies. Counsel for the Class indicated that the Beaumont study was part of the Defendants' ongoing research toward identifying defective valves, that the techniques developed there did not yet constitute a practical technique for detecting defective valves, and that that research would be handed over to the independent Supervisory Panel, one of whose duties is to direct research under the settlement. Having met with the now empaneled Supervisory Panel, the Court is satisfied that this independent group of top-flight medical experts will examine the Beaumont research and make the appropriate reports to the Court.

We further note that many decisions remain for this Court, the Special Masters/Trustees and the expert panels, before the settlement can be fully implemented. Significant among them are the nature and amount of diagnostic testing which will be provided. This in turn is dependent upon the research and recommendations of the Supervisory Panel. Such basic issues as what constitutes a fracture and who should be eligible for replacement surgery are yet to be decided. The Court is most anxious to embark upon this stage of the case and to begin to see the settlement actually benefit the class members. For this very practical reason, in addition to the legal requirements discussed above, the Court must deny the PCO's motions.

## II. GARY CRANE *ET AL.*'S MOTIONS

Class members Gary Crane, Gene Randall, and *amicus curiae* Public Citizen have move for a discovery and briefing schedule on attorney's fees. Previously, we have stayed all matters concerning attorney's fees pending the decision of the United States Supreme Court in regard to *certiorari.* Since the Supreme Court has now declined to grant *certiorari,* we hereby lift that stay. Parties may conduct discovery in regard to attorney's fees until June 1, 1995. All motions in regard to attorney's fees must be filed with the Court by July 15, 1995.

Class members Gary Crane, Gene Randall, and Gerard Benadik have also moved to intervene. These class members seek to intervene in respect to "the attorney's fees issue,"

and "any other post-settlement matter upon which there might be an appealable issue." At the same time these movants admit that they "have no outstanding objections to the settlement other than the fees issues."

 We have already given the movants' counsel, who appeared as *amicus curiae* at the fairness hearings, the right to appear with respect to attorney's fees. They are entitled to participate in the briefing of the attorney's fees issue and to make appearances at any hearings the Court may conduct in regard to such matters. However, for the same reason stated above in regard to the Pennsylvania Class Objectors, we decline to grant their Motion to Intervene.

### III. INITIAL DISTRIBUTION OF CONSULTATION FUND

The Special Masters/Trustees have submitted for approval a Notice for Mailing to Class Members and for Publication. We hereby approve that notice. The Special Masters/Trustees have proposed that the first of two distributions from the Consultation Fund be made in December, 1994. We hereby approve that first distribution. In making that distribution, we order the Special Masters/Trustees to hold in reserve at least twenty-five percent (25%) of the Consultation Fund for the purposes of future payment of attorney's fees and expenses. We do this out of an abundance of caution. This percentage does not represents the Court's future intentions in regard to attorney's fees. That decision will be made at a later date after the Court has had the opportunity to review the briefs on the subject of attorney's fees, the filing of which we have authorized above. Furthermore, the fact that we are reserving this amount from the Consultation Fund does not represent a decision to preclude the use of monies from the other funds for the purpose of attorney's fees.

### CONCLUSION

Accordingly, for good cause shown and in the interest of justice, the Motion by the Pennsylvania Class Objectors for an Order to Alter or Amend Order Dated April 14, 1994 (doc. 371) is DENIED. The Motion by Class Members Gary Crane *et al.* to Intervene

(doc. 373) is likewise DENIED. The Motion of Class Members Gary Crane *et al.* for Discovery and Briefing Schedule on Attorney's Fees (376) is GRANTED as described above. Finally, the Special Masters/Trustees' Notice of Mailing to Class Members and for Publication (doc. 397) is APPROVED and the Special Masters/Trustees' request to partially distribute monies from the Consultation Fund is APPROVED with the limitations set forth above.

SO ORDERED.